All right. And finally, our last case on for today is National Casualty Company v. Georgia School Board Association-Risk Management Fund. We will hear first from Mr. Seaver. Thank you, Your Honors. This is Jay Sever on behalf of National Casualty Company. Welcome to the world, crazy world of competing other insurance clauses. This is a case brought by National Casualty on appeal from a district court ruling that both National Casualty and GSBA, who's the Georgia School Board Association-Risk Management entity, should insure the Professional Association of Georgia Educators as essentially co-primary insurers at the same level. Counsel, this is Robert Lund. So assume for the moment that I am interested in the crazy world, as you call it, of competing other insurance clauses, but I am even more interested in jurisdiction, in our jurisdiction. And so what I want to do is ask a couple questions regarding Rule 58 and then maybe some others, okay? So Rule 58, as I understand, allows a deputy clerk or a clerk to enter a judgment for a court without direction in three instances. One is where the jury returns a general verdict, and here there is no jury. One is where the court denies all relief, and as you know, that's not the case here, since relief was granted to some extent with regard to some claims. And then the last one is the court awards only costs or is some certain. And I know you state that that is the provision which applies here. How here, given that there was simply a notice of stipulation and then the clerk's order, is there a direction here that the court is the one that awarded a cost or sum of money? Your Honor, the court considered the evidence that was provided by the stipulation. The stipulation itself was not some form of stipulated judgment. Rather, it was a statement of the evidence as to exactly what the amount of the judgment would be if it were put in front of the court. Sorry, I apologize. Go ahead. Go ahead, Judge Locke. Well, what I was going to say is certainly that's the case, but that the parties stipulated or agreed to a certain damage amount based on the prior partial summary judgment. But the question for me is where is the – there seems to be a missing gap between the entry of what the clerk did and that notice of stipulation of the court awarding some sort of cost or some certain – based on that. Right? I think it's the interpretation of both of the parties on appeal here that the court, in fact, did view the evidentiary presentation and decided on its own. Counsel, here's the problem with that that I see, but maybe you can address it for me. The problem is before the stipulation was filed, the court instructed the parties to go ahead and, you know, and file a motion that I can decide this on the papers, that I can make these decisions, I can grant partial summary judgment, whatever. No such motion was filed. So it's clear when you read the docket entry that the court made with respect to instructing the parties about the stipulation that it anticipated doing something further before judgment was entered. At least it seems clear to me. And, you know, that's what appears to be missing to me after the stipulation is entered. Can you tell me why that's not the case? Why we shouldn't look at what the court said before the stipulation was entered and note that there was no further court activity after the stipulation was entered so it does not appear that the court entered a final decision? I think we can only go on the record, Your Honor. What the parties did was attempt to present to the court the functional equivalent of evidence so that the court could then enter a final judgment. It was at that point all of the evidence that was potentially relevant was presented to the court, and the court, I think, purported to enter a final judgment based upon that evidence. Counsel, I'm sorry. Are you suggesting that the courtroom deputy's judgment that reflects on its face that it was entered at the clerk's office and not by direction of the court somehow accomplishes what the court said it was going to do when it asked for the stipulation? And if so, how do we reach that conclusion? I don't think we can read into the clerk's office motivations. I think the best we can do is to say that the final judgment was entered appropriately because the parties had provided the evidence to the court upon which the court could make the decision on the evidence. And it really is simple evidence as to the amounts that were at issue. The amounts that were issued were fairly simple for the parties to stipulate to because they are very clear and obvious. Counsel, I'm sorry. You're right that sometimes if there are just calculations to be done that are obvious as to what they would be, that we can go ahead and assume that that's what the final decision was. The problem here is that there are different calculations, different prorata shares at different points in the stipulation. So I don't know that we can do that. And there's no formula that's suggested in any case by anything the court entered before the stipulation was filed. So if you could, I'd like it if you could address that. And then second, after you address that, if you would assume just for purposes of the question that there is a jurisdictional problem, do we have any alternative but to dismiss? Well, the first question is simply that we, the parties, assumed that the court took the stipulation, understood the factual recitations in the stipulation, and therefore directed that the final judgment be entered. And so I think that's as far as we can go into reading into the mindset of the district court. But I can tell you that, again, whether or not there are different prorata analyses within the stipulation, again, it was the party's intention that the district court fully consider each of those based upon the evidentiary record presented. As to whether we could do something similar so that we, if in fact there is a jurisdictional problem here, so that we could make clear as a factual matter that this information, A, should be taken into consideration for final judgment, B, that the parties are not essentially stipulating to a judgment but are presenting the undisputed evidence so that a judgment could be entered. I would hope that the Eleventh Circuit has a mechanism where they could essentially take the step that they think is necessary here. But I can't cite to you a specific rule that would allow the Eleventh Circuit to do that. But, counsel, isn't the problem... I think the appellate rules answer some of those questions. If you assume, as Judge Rosenbaum did, that there is no final judgment, we do allow sometimes for premature appeals where a notice of appeal is prematurely filed for the judgment to be entered and ripened, but there's no judgment here. So there's nothing that has later happened that ripened the appeal. So if there's no judgment at all and we only have jurisdiction under Section 1291 for final orders and judgments, where would we derive our jurisdiction from to do what you're asking, which is to give some sort of limited remand, to ask for a fact-finding on what it meant? Where would that come from? Where would that authority come from? I don't think we can cite you authority for that. You may want to, counsel. If there's no judgment at all, Your Honour, I think there is no basis for such a thing that I know of. Of course, we have made clear our belief that there is a final judgment and that it's appropriate, but I think under your hypothetical, there would not be an appellate rule that would allow something different. But on the merits of the argument, assuming there is a final judgment for appeal, Your Honours, I think the bottom line here is pretty simple, that Georgia law requires that you apply the specific rules of contract interpretation, which would compel you to give effect to the actual words in the GSBA policy. The actual words in the GSBA policy do everything but list the policy number of the other coverages that are applicable here. They very specifically stipulate that they are access to any state pools and or programs of self-assurance. Thank you. All right. Thank you, counsel. And you've reserved five minutes for rebuttal. We'll hear next from Attorney Johnson. Good morning. May it please the Court, I'll try and address the jurisdictional question first and then the coverage issue second. The GSBA has been trying to collect the money that is owed to it from national casualty for years. There's no question that nothing would make national casualty happier than to delay that payment date further. The judgment that is entered in the record, which is document number 70, states that it is a judgment ordered in a judge that the parties have stipulated to the stipulated fax request for entry of final judgment 69. That came about through a very back-and-forth exchange between the judge and the parties where we had sent the judge the stipulated series of facts. The judge questioned whether they could be amended. She wanted things to be corrected in it to make it so that it would be acceptable. We then redrafted the stipulated set of facts. We sent it to the judge. The judge's own clerk then said, this is what the judge would like to file in relationship to that judgment that you have stipulated. The only thing that remained in dispute between the parties was the pro-rata ruling of Judge Duffy reaffirmed by Judge May. Everything else had been agreed to by the parties in toto and for entry of final judgment in toto. Counsel, this is Robert Buck. If I can go to the same rule. Rule 58 is the one that allows a court to enter a judgment without direction. I guess my first question to you briefly, yes or no, was this a clerk's judgment that was entered without the direction of the court? This was specifically authorized by the court. Where? The email changed back and forth between the parties coming to the entry of this judgment. This is drafted by the judge's own clerk. It's sent back and forth and modified with the judge's own clerk. Where in the record, counsel, that we have, is there a direction to enter this judgment? The email exchange between the parties and the judge was not put up in to the record. It was not a formal filing between the parties. But there's no dispute between the parties that you ask. Counsel, I understand there's no dispute between the parties. I understand both of you want jurisdiction and we'd love to decide the case, I'm sure. But the issue is what we have as a final judgment. On the face of the 2009 document filed by the clerk, is it done at the direction of the court? I can tell you with 100% assurity it was, as that is what was sent back and forth between the court. On its face, it doesn't state that it's done pursuant to the clerk, other than prepared and filed in the clerk's office, clerk of court by Rebecca Batchelor, which is Judge May's courtroom deputy clerk. Right. On the face of it, it says that. Right. For judgments that are entered without direction from the court, it's one of three things that's required. In other words, unless the court says in an order, the clerk has to enter judgment, the clerk can do it on its own in three instances under the rule. Instance one is if there's a general verdict by a jury, which there's not here. C, the third one, is the court denies all relief. That's not happening here because you won or you won something. The only one that seems to apply is the second one, and that one says the court awards only costs or some certain. Here, I think as Judge Rosenbaum noted and as I've asked, there seems to be a step missing between your stipulation and then something coming after that where the court says, I accept the stipulation and award these costs. That step seems to be missing, right? Well, it's prepared by the judge's clerk, and it says that ordered a judge entitled to final judgment consistent with the party stipulation of the notice of stipulated facts and request for entry of final judgment, and then it specifically includes the award amount of $481,000, et cetera, in favor of the Georgia School Board. That seems to, at least to the parties, we understood fully, it was an order from the court accepting those stipulated facts and entry of final judgment and awarding a fixed sum in relationship to that judgment. But the court, the judge, never awarded a sum of cost. The clerk entered a judgment consistent with what your stipulation was, what the parties understood, but the court itself didn't enter anything that said this is what the sum certain you were owed, right? James Hatton, the clerk of court, is not the person who signed the final judgment. It is Rebecca Batchelor from Judge May's office. Right, but the rule contemplates something preceding this document. So if you look at Rule 51B1, and this was cited to you in the jurisdictional questions that you didn't respond to, the parties said, or the rule states that the clerk must enter a judgment when one of three things happens, and that is when the court awards only costs or a sum certain. So there needs to be something preceding this where the court awarded it. And the only thing preceding this that I understand is the notice of stipulation that was signed by the parties, right? And discussion with the court and argument with the court and drafting with the court and communications as to how the court wanted the final order to be stated. So if you could just answer the hypothetical that Judge Rosenbaum asked you, which was assume for the moment that we don't agree that this is a final judgment, what are we to do? Your Honor, if the parties, and I understand the court has to make its own jurisdictional decisions, the parties certainly are of the position that I've stated, that through the court, Judge May's instructions, Judge May's decisions, Judge May's acceptance, Judge May's entry of this order for final judgment, none of that's disputed by the parties. And all I can say is that to the extent we're trying to fit within the jurisdictional rule, if the parties do not dispute that this is an order coming from Judge May signed by her clerk, then jurisdictionally, if there's no objection to that position that both parties take,  I know that my clock is ticking, and it's important that I address the issues. State Farm versus Holton expressly stated that where primary insurers seek to limit their liability, if there is other insurance, then those clauses are irreconcilable, and Pro Rata applies. If you read specifically the first line of the national casualty policy, it says this policy is specifically excess if the insurer has other insurance of any kind whatsoever. The coverage document, which is not an insurance policy issued by the GSBA, under its insurance clause says if valid and collectible insurance is available to the member, then this is excess. Both parties' policies clearly use the if term. Irrefutably, if the if is not met, they are primary policies. Neither policy is contending in any form or fashion that if there were not any other coverage available, that they would not be primary. So these are purely primary policies who are seeking to elevate themselves to an excess position if there is other insurance available. Pro Rata law clearly applies. It does not change one whit, and it's important to note in all the arguments put forth by national casualty, they seek to talk about their policy saying, well, we are excess, whether primary, excess, umbrella, or contingent. We are a risk pool. We are self-insurance. We are not an insurance policy. To distinguish ourselves from all insurance, we need only in the insurance clause state that if there is insurance available, then we are excess, and that applies to any striper level of insurance. There is no question in this case that both parties are seeking the excess status. If we were to say in the risk pool coverage document, we are excess all insurance available to the insured, and then we went on and listed every different type of commercial insurance we could think of, said it was primary, excess, umbrella, or contingency, does that additional language gain any substantive difference? Not one whit. Should we identify the national casualty policy by name when we say we are excess all other insurance? Does that gain anything? Nothing. There is nothing that is added to the plain, elegant, and simple language of the GSBA risk pool coverage document. And if we are to elevate specificity, then nothing can be more clear than all insurance, if it is available, is there. There's also no dispute that the insurance is available. It's a complete red herring to talk about language that says available or collectible. Both policies are clearly collectible. Both policies have paid on these types of losses before. It is only when this issue came up and they decided they were going to take this position that we have a dispute and we have a stipulated set of facts under 69, document 69, where they clearly state that they will pay over $480,000. That is clearly collectible and available insurance to the mutual insurers. This is all reflected in Judge Duffy's footnote number four and Judge May's footnote number two in their respective orders with regard to the battle of draftsmanship. The out-of-state cases that NCC relies on most heavily, Maryland Casualty v. Horace Mann, deal with states that do not follow the irreconcilable rule. However, Florida does follow the irreconcilable rule, and the main case cited by NCC or National Casualty, Maryland Casualty, was rejected in American Casualty of Reading, Pennsylvania v. Healthcare Identity, 613F2nd 310, Middle District of Florida, 2009, saying Florida has the irreconcilable rule, does not follow. The rule set forth in the Maryland Casualty v. Horace Mann case found that the other insurance clauses were mutually repugnant, even if they used the words primary, excess, contingent, or otherwise. The North Star case, American Casualty of Reading v. MAG Mutual, 2006, 11th Circuit. As the court knows well, that was two professional liability policies involved in covering a party. The district court said because one of the professional liability policies was under a blanket endorsement that specifically says it is excess. If an individual doctor obtains an individual policy, naming it individually, the district court said that was specific enough to note a difference, place that blanket endorsement, excess. The 11th Circuit Judge Toflik said, look, when you look at it and boil it down, it comes down to the same basic understanding of the irreconcilable rule. The American Casualty policy was excess to any other insurance. It did not limit itself to primary insurance. MAG's policy said it's contingent. Another policy named insured specifically, but in the end, it comes to the same result. Both primary policies were seeking to be excess of each other, and MAG's policy was not a true excess or umbrella policy. Excuse me? I couldn't hear. Ms. Geddes, I'm sorry. How much time did you say was remaining? Two minutes. Thank you, Ms. Geddes. Go ahead, counsel. I'm sorry. The MAG policy was not a true excess or umbrella. The 11th Circuit held, having clarified that this case involves two primary policies, each which contains a relevant excess clause, we agree with American Casualty that those excess clauses reflect irreconcilably. It's a red herring to play the read-me-first rule that NCC, excuse me, National Casualty sometimes argues. Once you read my policy, I become unavailable. That's the same thing for me. If you read my coverage document, I become immediately unavailable and uncollectible because I say if any other insurance applies. And that has also been already decided by the Georgia Courts in Southern Home versus Willoughby where they decided the previous, and I don't have time to quote Judge Healey of the 9th Circuit, it's a chicken and egg. You don't play that game. Also, whether collectible or not has been rejected in Philadelphia Identity versus First Multiple Listing Service, the Northern District 2016. In the end, the court, we asked the court to affirm the orders of Judge Duffy and Judge May, finding that between a commercial liability policy provided by National Casualty and a self-insured pooled risk coverage document, they are both primary coverages, both seek by their plain terms to de-excess the other, and therefore, according to American Casualty, the pro rata rule applies. We request that the judgment in Document 70 be affirmed, and finally, that GSBA be able to collect after the many years its defense and indemnity costs for defending and indemnifying the insurers of National Casualty. Thank you, Your Honor. Thank you, Counsel. Mr. Staber, you have five minutes of rebuttal time. Thank you, Your Honors. So, getting to the issue, the real question here is, are these two provisions that we're looking at reconcilable or not? And Georgia law is not, as GSBA has suggested, that simply any time insurers attempt to make themselves excess, those two provisions must be irreconcilable. That is what GSBA is telling you. They've said it in their papers. They just said it again. That cannot be the rule. That cannot be the rule because it violates basic contract interpretation law that requires you to give effect to policies if it can be given effect, but also there is law that makes clear that the more specific governs over the more general. To be very clear, this court has held in the MAG case that was just cited to you that the mere fact that two policies contain excess clauses does not mean they are irreconcilable. It doesn't mean they're irreconcilable. And so the question here that the district court ignored is, can these two provisions be reconciled? And the answer is very straightforward. They can be reconciled because the language in the GSBA coverage document makes clear that it is a very, very simple attempt to make excess the GSBA coverage when there is valid and collectible insurance. Well, that is not at all what the NCC provision says. The NCC provision actually says this policy is excess whether the other one is collectible or not, and that this policy is meant to be excess over risk pools and this exact kind of situation. So those two things are reconcilable. It's not a red herring. But, counsel, in Holton, there seemed to be, well, not the exact same language, one policy which said to use the same valid and collectible language available that's in the risk policy, and then another policy which simply said generally, if there is any other insurance available to any other names or unnamed, this endorsement will apply only as excess, and that was it. And there the court didn't distinguish based on collectible or not. It said they were irreconcilable. That's correct, but both of those provisions used the word available. Yeah, but not collectible. Counsel, not collectible. Not collectible, right. You're correct, Your Honor, but the fact that they both used the word available takes us to a different place than you have with the national casualty policy that doesn't talk about available. It says whether collectible or not. And so I think that those two provisions in Holton are very different than these, and there was no attempt, obviously, as there is with national casualty in either of the two provisions in Holton, to try to list out the kinds of insurance that the policy would be excess to. There just simply isn't a Georgia case anything like this, and it really pushes us into the world of trying to understand what Georgia, what the Georgia Supreme Court would say in terms of looking at the irreconcilable rule on one hand and looking at the law in Georgia that requires that you give specific interpretation and that you attempt to give the contractual meaning and not just hold that the language in these policies is meaningless or superfluous. The language in the NCC policy is basically being ignored if you just say, okay, these are both excess clauses and we're not going to really attempt to apply them. The reality is that none of the cases, whether you're talking about Magnusial, Valley Forge, Willoughby, or Holton contain any language that is reasonably or mostly like it. Holton seems to reject this concept of finding one more specific and the other not. In reaching its conclusion that the clauses are irreconcilable, it says that some courts have tried to do that, but we're not persuaded that that's the right way to go, and so we're not going to do it. We find them if there are other insurance clauses to be in conflict. They did that based upon the facts in front of them, and the two policy provisions in front of them were, from my perspective, pretty much the same, partly because they both used the word available, and I think that makes it very different. This court, I think, has said what I'm trying to say, which is the fact that you merely have two excess other insurance clauses doesn't mean they're irreconcilable, and in this case, these are reconcilable. You just need to read the two and apply them literally. How is the national policy not available? The national policy is not available because it starts out as excess. It starts out as excess to any other insurance, including risk pool, i.e. GSBA. That's exactly why. Thank you, counsel. I think we have your argument, and we will be in recess. Have a great weekend. Thank you, Your Honor.